In re MTC ELECTRONIC TECH-
NOLOGIES SHAREHOLD-
ER LITIGATION

This Document Relates To: Fred
Kayne, et al. v. MTC Electronic
Technologies Co., Ltd., et al.

Nos. 93–CV–876 (JG), 95–CV–2499 (JG).
No.MDL 1059.

United States District Court,
E.D. New York.

Nov. 17, 1999.

Lawrence H. Nagler, Robert M. Zabb, Nagler & Associates, Los Angeles, CA, for Fred Kayne, et al.

Gary P. Naftalis, Kramer Levin Naftalis & Frankel, New York City, for Daiwa Securities America, Inc.

Bruce S. Kaplan, Friedman Kaplan & Seiler LLP, New York City, for Robert Farr, et al.

### MEMORANDUM AND ORDER

GLEESON, District Judge.

Defendants Daiwa Securities America, Inc., Robert Farr, Peter Jensen, Thomas Lenagh, Edilberto Pozon, Goodwin Way, and David Wong move to dismiss the Racketeering Influenced and Corrupt Organizations Act ("RICO") claims brought in the plaintiffs' third amended complaint. They contend that these claims are barred by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). In addition, Daiwa and two of the individual defendants move to dismiss on the basis that the complaint fails to allege a sufficient "pattern of racketeering activity" as required by RICO. I referred the motion to Chief Magistrate Judge A. Simon Chrein for a report and recommendation. On October 29, 1998, Judge Chrein recommended granting the motion to dismiss on the basis of the PSLRA. Should I disagree with that recommendation and find it necessary to reach the second ground for dismissal, Judge Chrein recommended denying the motion.

For the reasons discussed below, I respectfully disagree with Judge Chrein's recommendation regarding the PSLRA. The motion to dismiss the RICO claims is therefore denied.

### FACTS

The relevant facts are set forth in Judge Chrein's opinion, familiarity with which is assumed and a copy of which is attached.

### DISCUSSION

A. *RICO and the Private Securities Litigation Reform Act*

RICO criminalizes, *inter alia*, the use of funds derived from a pattern of racketeering activity to invest in an enterprise; the use of a pattern of racketeering activity to obtain an interest in or control of an enterprise; and the conduct of an enterprise's affairs through a pattern of racketeering activity. *See* 18 U.S.C. § 1962(a)–(c). In addition, RICO confers a private right of action, which provides for treble damages and attorneys' fees, on "[a]ny person injured in his business or property by reason

of a violation of section 1962." 18 U.S.C. § 1963(c). As part of the PSLRA, Pub.L. No. 104–67, § 107, 109 Stat. 737, 758, Congress narrowed the RICO civil action by stating that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962."[1] 18 U.S.C. § 1964(c) (Supp. III 1997). The plaintiffs apparently concede that if the PSLRA applies to their RICO claims, they must be dismissed. They contend, however, that the PSLRA should not govern claims alleging violations of RICO that took place before the PSLRA's enactment date of December 22, 1995. I agree.

■ The obvious starting point of the analysis is the text of the PSLRA. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach."); *id.* at 263, 114 S.Ct. 1483 (discussing search for "unambiguous directive" on question of retrospective application); *Martin v. Hadix*, 527 U.S. 343, 119 S.Ct. 1998, 2003, 144 L.Ed.2d 347 (1999).

Section 108 of the PSLRA is titled "Applicability" and reads: "The amendments made by this title shall not affect or apply to any private action arising under title I of the Securities Exchange Act of 1934 or title I of the Securities Act of 1933, commenced before and pending on the date of enactment." Courts have come to three strikingly different conclusions when considering whether this provision answers the question of the RICO amendments' retrospective application.

Some courts have concluded that the PSLRA reflects a clear Congressional intent to apply the RICO amendments retrospectively. Section 108, the prospective

application provision, refers only to "any private action arising under *title I of the Securities Exchange Act of 1934* or *title I of the Securities Act of 1933*" (emphasis added) and not to actions arising under RICO. In the view of these courts, this omission "implies an intention not to limit application of the RICO amendment only to cases commenced after enactment." *Reading Wireless Cable Television Partnership v. Steingold*, No. CV–S–95–785DWH(LRL), 1996 WL 741432, at *2 (D.Nev. July 30, 1996); *see also Krear v. Malek*, 961 F.Supp. 1065, 1073 (E.D.Mich. 1997); *Rowe v. Marietta Corp.*, 955 F.Supp. 836, 848 (W.D.Tenn.1997).

The Seventh Circuit came to the opposite conclusion in *Fujisawa Pharmaceutical Co. v. Kapoor*, 115 F.3d 1332 (7th Cir.1997), holding that Section 108 evinced a clear intent to make the PSLRA inapplicable to *all* claims pending upon enactment:

[Defendant] argues that the suspension of the amendment is applicable only to securities claims, and not to RICO claims. The argument is hard to fathom. The new law deals only with securities litigation, and with RICO only insofar as a RICO claim might be part of an action brought under the securities laws as well-like this suit. It is only in cases such as this that RICO claims can no longer be brought and hence only in cases such as this that were pending on the date of enactment that the right to maintain a RICO claim is preserved.

*Id.* at 1338.

Finally, a third group of courts has concluded that the PSLRA evinces no intention on Congress's part one way or the other regarding the retrospective application of the RICO amendments. *See Mathews v. Kidder, Peabody & Co.*, 161 F.3d 156, 161–63 (3d Cir.1998) (finding no "ex-

---

1. This exception contains a proviso, not applicable in this case, stating that "[t]he exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud...." 18 U.S.C. § 1964(c) (Supp. III 1997).

press command" or evidence of Congressional intent on the question), *cert. denied,* —— U.S. ——, 119 S.Ct. 1460, 143 L.Ed.2d 546 (1999); *Baker v. Pfeifer,* 940 F.Supp. 1168, 1176–77 (S.D.Ohio 1996); *In re Prudential Sec., Inc. Limited Partnerships Litigation,* 930 F.Supp. 68, 81 (S.D.N.Y.1996); *District 65 Retirement Trust v. Prudential Sec., Inc.,* 925 F.Supp. 1551, 1569 (N.D.Ga.1996); *see also* Report & Recommendation at 284.

I concur with this latter group of courts that have not found a satisfactory answer to this question in the text or structure of the PSLRA. *Landgraf* demands an "unambiguous directive" from Congress before a court may apply a statute retrospectively. *Landgraf,* 511 U.S. at 263, 114 S.Ct. 1483. A negative inference from Section 108's exclusion of RICO is an ambiguous directive, if that. I therefore conclude that the PSLRA provides no explicit or (sufficiently clear) implicit indication of Congressional intent to apply the RICO amendments to actions involving pre-enactment events. *See Mathews,* 161 F.3d at 170 ("[W]e find defendants' reliance on unstated intentions, absent language, and explicit congressional directives in non-RICO areas of the Reform Act to be far from the clear evidence we seek when discerning congressional intent."); *Baker,* 940 F.Supp. at 1177 ("[I]t is unlikely that Congress chose to indicate its desire for retroactive application of the RICO Amendments—which will likely affect hundreds of pending cases—by such a roundabout method."); *District 65 Retirement Trust,* 925 F.Supp. at 1569; *cf. Martin,* 119 S.Ct. at 2004 ("This language falls short of demonstrating a 'clear congressional intent' favoring retroactive application of these fees limitations." (quoting *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483)).

Likewise, I am not convinced by *Fujisawa*'s conclusion that Section 108 can be read to limit the reach of the RICO amendments. At least until enactment of the PSLRA, RICO provided a free-standing cause of action in cases such as this one. Although securities fraud is a necessary component of such a claim, it is not a sufficient one, since RICO includes other required elements, such as proof of a pattern of racketeering activity and the requisite relationship between the pattern (or its illicit proceeds) and an enterprise. In addition, RICO provides remedies unavailable under the securities laws. A RICO claim involving securities fraud cannot therefore fairly be termed a "private action *arising under* title I of the Securities Exchange Act of 1934 or title I of the Securities Act of 1933." PSLRA, § 108 (emphasis added). True, if the "action" here is defined as the entire case, one might say that it arose under the securities laws, since the complaint alleges violations of those laws. By this reading of the provision, pre-PSLRA RICO claims would survive, thanks to Section 108, so long as they were raised along side pure securities claims. I cannot conceive of why Congress would have wanted the retrospective application of its RICO amendments to turn on such a pleading distinction. *Cf. Mathews,* 161 F.3d at 162 n. 11 ("[W]e express doubt regarding the soundness of the holding in *Fujisawa*—allowing RICO claims to fall under the Applicability Provision only by piggybacking on ... securities-law claims."). Moreover, it seems unsound to decide this purely legal question on a case-by-case basis.

█ Having determined that Congress has not "expressly prescribed the statute's proper reach," *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483, I must now decide "whether the application of the statute to the conduct at issue would result in a retroactive effect,"[2] *Martin,* 119 S.Ct. at 2003; *see*

2. In this opinion, I have adopted the terminology used by the Third Circuit:

'Retroactive effect' refers not to a statute's temporal reach—which is the ultimate question to be answered in these cases—but to the effect the statute would have if applied retrospectively; i.e., would it reach back in time and alter the rights or obligations on

also *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. A statute will not be said to have a retroactive effect "merely because it is applied in a case arising from conduct antedating the statute's enactment" or because it "upsets expectations based in prior law." *Landgraf,* 511 U.S. at 269, 114 S.Ct. 1483. The test is instead "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 269–70, 114 S.Ct. 1483; *see also Martin,* 119 S.Ct. at 2006.

Applying the RICO amendment to cases involving conduct preceding the statute's enactment meets this definition of retroactive effect.[3] Without the PSLRA, engaging in a pattern of racketeering involving securities fraud carried the legal consequence of treble damages to any injured party. With the PSLRA, that legal consequence is removed. *See Mathews,* 161 F.3d at 164; *see also* Michael S. Rafford, *The Private Securities Litigation Reform Act of 1995: Retroactive Application of the RICO Amendment,* 23 J.Legis. 283, 303 (1997) ("Applying this provision to conduct that occurred before this amendment was passed ... will deprive plaintiffs of a legitimate tool of recovery that existed at the time they were injured."); *cf. Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 946, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) ("The 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" (quoting *Landgraf,* 511 U.S. at 265, 114 S.Ct. 1483)). *But see ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.,* 957 F.Supp.

which the parties relied prior to the statute's passage. If so, the statute is said to have 'retroactive effect' and ... its application to pending cases is disfavored. To minimize confusion, we refer to a statute that applies to pending cases as one with 'retrospective' application. *Mathews,* 161 F.3d at 160 n. 5.

3. My analysis does not differentiate between those RICO claims pending on the date of the PSLRA's enactment and those raised later by additional plaintiffs. At least in this case, analysis of retroactive effect pursuant to

1308, 1321 (S.D.N.Y.1997) (finding mere change in remedy insufficient to establish retroactive effect). That such conduct would be tortious under either regime does not change the analysis; a change in the kind or measure of damages can be enough to create a retroactive effect. *See Hughes Aircraft Co.,* 520 U.S. at 947–48, 117 S.Ct. 1871; *Landgraf,* 511 U.S. at 282–83, 114 S.Ct. 1483.

Judge Chrein found it significant that Congress had passed the RICO amendment to "correct a mistake." Report and Recommendation at 6 (quoting *Rowe,* 955 F.Supp. at 847). This argument, also used in other cases applying the RICO amendment retrospectively, *see, e.g., Reading Wireless,* 1996 WL 741432, at *2, is based on a passage from *Landgraf.* To demonstrate why I believe this argument is misplaced, it is necessary to place this "mistake" language in context. To illustrate our legal system's history of disfavoring retrospective legislation, the Court in *Landgraf* canvassed Constitutional provisions, such as the Ex Post Facto clause, that reflect the "antiretroactivity principle" and can trump Congress's attempts to apply statutes to completed conduct. *Landgraf,* 511 U.S. at 266, 114 S.Ct. 1483. The Court went on to point out, however, that "[t]he Constitution's restrictions ... are of limited scope" and that "[a]bsent a violation of one of those specific [Constitutional] provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." *Id.* at 267, 114 S.Ct. 1483. The Court continued:

*Landgraf* turns on when the primary conduct at issue in the suit took place, not when the complaint was filed or claims were raised. *Cf. Mueller v. Angelone,* 181 F.3d 557, 566–69 (4th Cir.1999) (holding that amendments to habeas statute could have "retroactive effect" even in cases filed after amendments' enactment). *But see ABF Capital Management,* 957 F.Supp. at 1321 (distinguishing cases based on whether RICO claims were asserted before or after enactment of the PSLRA).

Retroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary. However, a requirement that Congress first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness.

*Id.* at 267–68, 114 S.Ct. 1483.

When read in context, it is clear that the Court was *not* saying that legislation intended to "correct a mistake" has no retroactive effect. Its point was closer to the opposite. The Court was cataloging legitimate reasons Congress might have for including an express "retroactivity provision[ ]" in a statute. *Id.* at 267, 114 S.Ct. 1483. But, as I have found, there is no such provision in the PSLRA. This passage from *Landgraf* is therefore irrelevant to the question of whether applying the RICO amendment retrospectively would have a "retroactive effect," as that term is defined in other portions of *Landgraf.*

Defendants further contend that dismissing the RICO causes of action will not "impair rights [plaintiffs] possessed" because they still have securities claims. There is case law supporting this proposition, *see, e.g., Rowe,* 955 F.Supp. at 846–47, but I disagree with it. I see the presence or absence of other causes of action in this case as irrelevant to the question of retrospective application of the RICO amendments. As the Third Circuit has said in *dictum,* it would be strange to "determine the temporal reach of the RICO Amend-

ment on a case-by-case basis, based on the existence (or lack thereof) of non-RICO claims in plaintiff's case." *Mathews,* 161 F.3d at 164 n. 15. This litigation illustrates why such an approach would be unwise. Defendants have argued (thus far unsuccessfully) that plaintiffs' securities claims are time-barred. *See In re MTC Elec. Techs. Shareholder Litig.,* No. 93–CV–876, 1997 WL 1068695, at *1 – *2 (E.D.N.Y. Jan.24, 1997) (denying motion to dismiss based on statute of limitations). Were I to dismiss the RICO claims (which have a longer statute of limitations) based on the presence of potentially viable securities claims, what would happen if the statute of limitations defense prevailed at trial, or on appeal? It would be a strange rule that would then allow the plaintiffs to revive their RICO claims, yet that seems to be the result defendants' analysis would require.

Since applying the PSLRA to the RICO claims would have a retroactive effect, the "traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483; *see also Martin,* 119 S.Ct. at 2003. For the reasons already discussed, I find no such intent here. Accordingly, I conclude that the PSLRA does not require dismissal of plaintiffs' RICO claims.[4]

### B. *Pattern of Racketeering Activity*

■ Defendant Daiwa Securities, joined by individual defendants Farr and Lenagh, has moved in the alternative for dismissal of the RICO claims based on the alleged failure of the plaintiffs' pleadings to meet RICO's continuity requirement. Magistrate Judge Chrein concluded that the allegations were sufficient to meet the

---

4. In reaching this decision, I did not consider the Kayne plaintiffs' reply memorandum of law and accompanying affidavit in support of its objections to the report and recommendation. Federal Rule of Civil Procedure 72(b) authorizes objections to a magistrate judge's report and recommendation and then responses (filed within 10 days of service of the objections), but not replies, and the Kayne plaintiffs never sought leave of the court to file these papers. I decline Daiwa's request for sanctions pursuant to 28 U.S.C. § 1927, but it is obviously free to make another request for sanctions in the event that the Kayne plaintiffs file unauthorized papers again.

continuity requirement and recommended denying the motion to dismiss on this basis (if I disagreed with his recommendation based on the PSLRA).

I conclude that the law of the case doctrine precludes defendants from relitigating this issue. *See United States v. Stanley*, 54 F.3d 103, 108 (2d Cir.1995) (noting that a court "will adhere to its own prior rulings in a given case absent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice"). Prior to this motion, Daiwa moved to dismiss for several reasons, including its contention that the predicate acts alleged in plaintiffs' RICO claims did not extend over a sufficient period of time to meet the RICO pattern requirement. I denied this motion on January 24, 1997.

Daiwa does not deny that it has already litigated this issue (and lost). Instead, it offers several reasons, none of them persuasive, why the law of the case doctrine should not hold. First, Daiwa points out that at the time the issue was previously litigated, the additional plaintiffs who raised RICO claims in the second and third amended complaints were not in the case. However, the allegations made by the later-added plaintiffs are identical to those Daiwa originally sought to dismiss; the addition of these RICO plaintiffs therefore changes nothing for purposes of the law of the case. Second, Daiwa contends that my January 1997 order "did not specifically address the sufficiency of plaintiffs' allegations as to the RICO pattern requirement." (Protective Objections of Defendant Daiwa Securities at 5 n. 3.) This point is irrelevant. The fact remains that Daiwa already moved to dismiss based on the RICO pattern standard, and I already denied the motion. That decision, whether accompanied by legal analysis or not, is the law of the case. Third, Daiwa contends that "case law developments subsequent to the briefing" of the previous motion to dismiss justify revisiting the issue. How-

ever, it points to no decision of the Supreme Court or the Second Circuit decided after litigation of the previous motion to dismiss that even addresses this issue, much less that undermines my previous decision. In a related argument, Daiwa points out that a court has the discretion to revisit a previous decision if it determines that it made an error. However, my review of Magistrate Judge Chrein's report and recommendation, which comes to the same result as I did in 1997, and the papers filed in response to it convince me that my previous decision was sound.

### CONCLUSION

For these reasons, I respectfully decline to adopt the report and recommendation. The motion to dismiss the RICO claims is denied.

So Ordered.

## REPORT AND RECOMMENDATION

CHREIN, United States Magistrate Judge.

The Honorable John Gleeson has referred the above-captioned matter to the undersigned Magistrate Judge for the purpose of preparing a report and recommendation on a motion made by Defendants Daiwa Securities America, Inc.; Robert Farr; Peter Jensen; Thomas Lenagh; Edilberto Pozon; Goodwin Way; and David Wong to dismiss the Racketeering Influenced and Corrupt Organizations Act (RICO) claims made in Plaintiffs' Third Amended Complaint. 18 U.S.C.A. §§ 1961–1966 (1998). For the reasons stated below, it is my recommendation that Defendants' motion be granted.

Plaintiffs allege that Defendants engaged in two fraudulent schemes: 1) falsely representing MTC's joint ventures in China, and 2) stealing MTC stock. Plaintiffs allege that as the underwriter for MTC's July 30, 1993 public offering, Daiwa was responsible for all prospectuses, preliminary and final, associated with that offering from October 1992 through July

1993. Compl. ¶ 48. From November 1992 to July 1993, Plaintiffs allege, Daiwa either drafted or approved in advance all press releases issued by MTC in connection with the public offering. *Id.* Plaintiffs also allege that from about August of 1992 until at least December of 1993, Daiwa participated fully in the fraud on the stock market to keep MTC stock prices high. *Id.*

Plaintiffs allege that to further the joint ventures in China, Defendants committed various acts of wire fraud in violation of 18 U.S.C. § 1343. These alleged acts of wire fraud are the predicate acts for Plaintiffs' RICO claims. Plaintiffs allege that between March and October of 1993, Daiwa sent multiple facsimile transmissions to MTC over interstate and foreign wire in furtherance of a fraudulent public offering of stock. Compl. ¶¶ 422–26, 428–29. These transmissions concerned the campaign for marketing the public offering, Compl. ¶ 422, control of information about the offering, Compl. ¶¶ 423–25, and alleged misrepresentations about MTC's "purported China telecommunications joint ventures." Compl. ¶¶ 428–29. In addition, Plaintiffs allege that with the advice and counsel of Daiwa, MTC "orchestrated an ongoing flow of confirmation of fraudulent information through telephone conversations with investors, investment consultants and investment advisors." Compl. ¶ 438.

## STANDARD OF REVIEW

In considering a motion to dismiss under the Federal Rules of Civil Procedure, this court must take "as true the facts alleged in the complaint and draw[ ] all reasonable inferences in the plaintiff's favor." *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699–700 (2d Cir.1994); *Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). This court may dismiss Plaintiffs' RICO claims pursuant to Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claims which would entitle [them] to relief." *Bernheim*

*v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994).

## DISCUSSION

### I. WHETHER SECTION 107 OF THE PRIVATE SECURITIES LITIGATION REFORM ACT SHOULD BE APPLIED RETROACTIVELY

Section 107 of the Private Securities Litigation Reform Act (PSLRA) amends 18 U.S.C.A. § 1964(c), a RICO provision, so that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67, § 107, 109 Stat. 737, 758 (codified at 18 U.S.C.A. § 1964(c) (1998)). Section 107 excludes from its purview actions against someone who has been criminally convicted in connection with the fraud, an exception that does not apply in the present case.

Plaintiffs argue that section 107 should not be applied retroactively to bar their RICO claims. I agree with Defendants that retroactive application of section 107 to bar Plaintiffs' RICO claims is appropriate. Section 107 does not have "retroactive effect" within the meaning of *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483 (1994), to preclude retroactive application. Furthermore, the cases cited by Plaintiffs, which hold that section 107 should not apply retroactively, are all distinguishable in that they preserve RICO claims only where there are no longer any viable securities law claims. Here, Plaintiffs have viable securities law claims.

A threshold question is whether section 107 applies at all to the present case. I find that it does. Plaintiffs' alleged RICO violations are based on wire fraud, which is actionable as securities fraud. Thus, Plaintiffs' RICO claims come squarely within the reach of section 107.

B. Retroactivity Analysis under *Landgraf*

In *Landgraf,* the Supreme Court set forth the test to be applied in order to determine whether a statute should be applied retroactively. First, a court should look to see "whether Congress has expressly prescribed the statute's proper reach." *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. If it has, then its directive should be followed. If Congressional intent cannot be ascertained, the court should then determine whether the statute would have "retroactive effect." If so, then it should not be applied retroactively. *Id.*

There was no clear expression by Congress of its intent as to the retroactive application of section 107. Congressional intent should be determined by examining the statutory text. *Landgraf,* 511 U.S. at 257, 114 S.Ct. 1483. The text of PSLRA is silent on the retroactivity of section 107. Neither section 107 nor section 108, which provides that PSLRA shall not apply to pending securities law claims, indicates whether section 107 should apply to actions pending on the effective date of PSLRA, December 22, 1995.

Considering the second prong of the *Landgraf* test, the *Landgraf* Court indicated three ways in which a statute could have retroactive effect: by impairing rights a party possessed when he acted, by increasing a party's liability for past conduct, or by imposing new duties with respect to transactions already completed. *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. I find that section 107 does not have retroactive effect under this test and thus, should be applied retroactively. *But see Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 117 S.Ct. 1871, 1876, 138 L.Ed.2d 135 (1997) (where statutory amendment eliminates defense to *qui tam* suit, *Landgraf* test as articulated herein "does not purport to define the outer limit of impermissible retroactivity. Rather, ... [it] constitute[s] a sufficient, rather than a necessary, condition for in-voking the presumption against retroactivity.").

My analysis of the history of this case indicates that there is no "retroactive effect." Section 107 does not impair rights Plaintiffs had when they originally brought suit. When Plaintiffs first filed this suit on January 23, 1995, they had both securities claims and RICO claims available to them. At that time they asserted only securities law violations. In August 1995, they amended the complaint to include a RICO cause of action. The effective date of PSLRA was December 22, 1995. In April 1996 and March 1997, the complaint was amended again, to include additional plaintiffs. It cannot be plausibly argued that Plaintiffs had a protectable right to bring a RICO claim and thus recover treble damages. As the court in *Rowe v. Marietta Corp.,* 955 F.Supp. 836 (W.D.Tenn.1997) reasoned, "retroactivity to correct a mistake is often entirely benign and legitimate." *Rowe,* 955 F.Supp. at 847. The "mistake" that section 107 was meant to correct was "the piling on of liability in cases where remedies for the same conduct had long since been in place and were adequate to address it." *Reading Wireless Cable Television Partnership v. Steingold,* 1996 WL 741432 (D.Nev.1996) at *2. Nor can it be argued that Plaintiffs would be deprived of their day in court if their RICO claims were dismissed, for their securities law claims survive.

With respect to Defendants, when they allegedly engaged in the conduct giving rise to this suit, they were potentially liable under both the securities laws and RICO. Applying section 107 retroactively would not increase their liability for past conduct, which is a concern under the *Landgraf* test, but rather decrease it by removing Plaintiffs' RICO claims from this case. The cases Defendants cite in support of their argument for retroactive application of section 107 involve plaintiffs whose securities fraud claims were still viable. Plaintiffs in the instant case still have securities fraud claims. On the other

hand, in Plaintiffs' cases, which hold that section 107 should not be applied retroactively, securities fraud claims were either time-barred or non-existent. The only federal remedy remaining to those plaintiffs was the bringing of RICO claims. I find this fact to be dispositive, even though none of the deciding courts explicitly based their rulings on it.

## II. WHETHER PLAINTIFFS HAVE ALLEGED A "PATTERN OF RACKETEERING ACTIVITY" UNDER RICO

Should the District Court find that section 107 ought to be applied retroactively, it will have to consider if Plaintiffs' RICO claims should be dismissed for failure to allege a "pattern of racketeering activity" as RICO requires. I find that Plaintiff has adequately alleged such a pattern under the closed-ended concept of continuity.

To establish a violation of RICO, Plaintiffs must first adequately allege a "pattern of racketeering activity." 18 U.S.C.A. § 1962(a), (b). There are two components to such a pattern: "a plaintiff ... must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Company,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Defendants contest only that Plaintiffs fail to satisfy the continuity requirement.

Alleging continuity means "plead[ing] a basis from which it could be inferred that [defendants'] acts ... were neither isolated nor sporadic." *Polycast Technology Corp. v. Uniroyal, Inc.,* 728 F.Supp. 926, 947–48 (S.D.N.Y.1989) (quoting *Beauford v. Helmsley,* 865 F.2d 1386, 1391 (2d Cir.) (en banc), *vacated and remanded,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584, *adhered to on remand,* 893 F.2d 1433, *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989)). The H.J. Court stated that " '[c]ontinuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.' " *Id.* at 241, 109 S.Ct. 2893.

I find that Plaintiffs have established closed-ended continuity sufficient to establish a pattern of racketeering activity. Contrary to Defendants' assertions, there is no bright-line test in this circuit for closed-ended continuity. While a few courts in this circuit have required a two-year minimum, this is the minority view. The majority of courts has considered a number of factors, including time, in determining whether closed-ended continuity exists. Applying this multi-factor test instead of a bright-line test of minimum duration, I conclude that Plaintiffs have succeeded in alleging closed-ended continuity.

### A. No Bright–Line Test for Continuity

According to the H.J. Court, "[a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J.,* 492 U.S. at 242, 109 S.Ct. 2893. In the Second Circuit, "there is no bright line test for determining precisely what period of time is 'substantial.' " *Metromedia v. Fugazy,* 983 F.2d 350, 369 (2d Cir.1992). *See also Brooke v. Schlesinger,* 898 F.Supp. 1076, 1084 (S.D.N.Y.1995). In *Brooke v. Schlesinger,* a district court ruled that seventeen months was a substantial period of time and noted that "[p]eriods of 10, 18, 19, and 20 months have been held sufficient to establish continuity." 898 F.Supp. at 1084 (false reports made daily over 17 months). The district court in *Farberware, Inc. v. Groben* ruled that ten and eleven-month periods constituted substantial periods of time. 764 F.Supp. 296 (S.D.N.Y.1991). This district has ruled that a two-year period is long enough to satisfy the closed-ended continuity requirement. *See, e.g., Caulfield v. Barristers Abstract Corp.,* 1995 WL 768967 (E.D.N.Y.1995); *Mason Tenders Dist. Council Pension Fund v. Messera,*

1996 WL 351250 (S.D.N.Y.1996). Despite Defendants' arguments to the contrary, sufficiency and necessity cannot be conflated.

A handful of district courts in this circuit has applied a bright-line test for closed-ended continuity, dismissing RICO claims based on predicate acts that occurred over less than two years. *See, e.g., North American Development, Inc. v. Shahbazi,* 1996 WL 306538 (S.D.N.Y.1996); *Stratavest Ltd. v. Rogers,* 1996 WL 306364 (S.D.N.Y.1996). While the Supreme Court has indicated that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement," *H.J.,* 492 U.S. at 242, 109 S.Ct. 2893, this statement does not translate into a firm requirement that Defendants' acts span at least two years. Defendants cite *GICC Capital Corp. v. Technology Finance Group, Inc.* in support of a bright-line test. 67 F.3d 463 (2d Cir.1995). In *GICC,* the Second Circuit gave great weight to duration and called such an approach "undoubtedly somewhat mechanistic," *id.* at 468, but nevertheless considered other factors in deciding whether the defendants' acts satisfied the continuity requirement. *Id.* at 468–69. The GICC court concluded that GICC's allegations of closed-ended continuity were inadequate because the acts involved in that case "occurr[ed] over less than one year *and* without a threat of future criminal activity." *Id.* at 469 (emphasis added). I find that, contrary to Defendants' argument, duration was neither the sole nor the dispositive factor in *GICC.* Thus, Defendants' reliance on *GICC* and its progeny is misplaced.

### B. Multi–Factor Test

Rather than apply a bright-line test of duration, most courts in this circuit have used a multi-factor test to evaluate whether closed-ended continuity has been shown. As one district court has noted, although continuity is "centrally a temporal concept," *H.J.,* 492 U.S. at 242, 109 S.Ct. 2893, "a determination of whether the continuity element is satisfied also involves consideration of factors such as type of acts, number of perpetrators, number of victims, and character of the goal." [1] *Ray Larsen Assocs. v. Nikko America, Inc.,* 1996 WL 442799 at *8 (S.D.N.Y.1996). Later cases added consideration of the scheme's complexity. *See, e.g., Skylon Corp. v. Guilford Mills, Inc.,* 1997 WL 88894 (S.D.N.Y.1997). These factors are "non-dispositive." *Polycast,* 728 F.Supp. at 948.

Under this test, there are few instances in which Second Circuit courts have found closed-ended continuity to exist. *See, e.g., Polycast,* 728 F.Supp. (pattern established where complaint alleges complex conspiracy, numerous perpetrators, variety of methods); *First Interregional Advisors Corp. v. Wolff,* 956 F.Supp. 480 (S.D.N.Y. 1997) (14–month scheme constituted pattern where several victims, numerous acts existed). However, I find present here the factors lacking in the many cases where courts did not find closed-ended continuity. *See, e.g., Skylon,* 1997 WL 88894 (scheme not inherently unlawful, one participant, extremely simple scheme, four months); *Pier Connection, Inc. v. Lakhani,* 907 F.Supp. 72 (S.D.N.Y.1995) (one victim, one scheme, one goal, ten months); *de La Roche v. Calcagnini,* 1997 WL 292108 (S.D.N.Y.1997) (limited number of partici-

---

1. The Second Circuit has drawn a distinction between acts that are "inherently unlawful, such as murder or obstruction of justice, and ... in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement" and those that are not. *United States v. Aulicino,* 44 F.3d 1102, 1111 (2d Cir.1995). The former can establish a threat of continuity, or continuity itself, "even though the period spanned by the racketeering acts was

short." *Id.* On the other hand, if the conduct and goal are not inherently unlawful, then courts have found "no threat of continuing criminal activity arising from conduct that extended over even longer periods." *Id.* This distinction is not important in the instant case because there is no claim that Defendants' alleged acts are inherently unlawful or in pursuit of inherently unlawful goals within the meaning of *Aulicino.*

pants, simple scheme, one victim, nine months); *GICC,* 67 F.3d 463 (one victim, handful of participants, simple scheme, 11 months); *Ray Larsen,* 1996 WL 442799 (one group of perpetrators, one victim, singular goal, 17 months).

Applying the multi-factor test described above, I find that Plaintiffs have succeeded in alleging closed-ended continuity. First, Plaintiffs allege that Defendants' acts took place over a fifteen-month period. This is longer than the "few weeks or months" that the *H.J.* Court disparaged, and since I reject Defendants' notion that a two-year minimum for duration exists, I find that the duration factor is satisfied. Second, Plaintiffs' complaint alleges numerous acts. Third, the number of participants was not limited to MTC alone. Daiwa and the individually-named Defendants are also alleged to be perpetrators. Fourth, there are many victims, as indicated by the number of plaintiffs in both the original class action and this *Kayne* action. Fifth, while the nature of Defendants' acts is not inherently unlawful, Plaintiffs' complaint indicates that the acts were varied. Not only did Daiwa underwrite the fraudulent public offering, but it also played a role in disseminating misleading prospectuses and press releases, as well as in perpetrating the fraud on the stock market. Moreover, there were two offerings of stock in the entire scheme. Finally, as indicated by the number and variety of acts alleged, the scheme was complex. Because I find these six factors to be present, I conclude that Plaintiffs have pleaded closed-ended continuity sufficient to satisfy the "pattern of racketeering activity" requirement.

## CONCLUSION

For the reasons set forth above it is the respectful recommendation of the undersigned that Defendants' Motion to Dismiss the RICO Claims Asserted in Plaintiffs' Third Amended Complaint be granted. Any objections to the recommendations contained herein must be filed with the Honorable John Gleeson on or before No-vember 13, 1998. 28 U.S.C. § 636; Fed. R.Civ.P. 6, 72. Failure to object will preclude appellate review.