David GUBITOSI and Susan Gubitosi and William Defeo, D.P.M. and Charles S. McConnell and Lehigh Valley Physicians Imaging Center

v.

Yonas ZEGEYE, M.D. and Hiruit Seleshi, his wife and Peter J. Karoly, Esquire and Lauren B. Angstadt, his wife and Ross B. Steckel and ZPR Investments, Inc. and ZP Investments, Inc.

Civil Action No. 96–CV–4927.

United States District Court, E.D. Pennsylvania.

Dec. 1, 1998.

Stephen R. Bolden, Fell & Spalding, Philadelphia, PA, for Plaintiffs.

Earl G. Kauffman, Philadelphia, PA, for Yonas Zegeye, Hiruit Seleshi, Defendants.

Edward R. Eidelman, Eidelman & Eidelman, P.C., Allentown, PA, for Peter J. Karoly, Lauren B. Angstadt, Ross B. Steckel, Defendants.

Joseph I. McDevitt, West Conshohocken, PA, for ZPR Investments, Inc., ZP Investments, Inc., Defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This case, which was until recently stayed by the bankruptcy filings of Defendants Yonas Zegeye and Hiruit Seleshi, is now before this Court for disposition of the Defendants' Motions and Supplemental Motions for Summary Judgment. For the reasons which follow, the motions shall be denied.

### Factual Background

This action arose in the summer of 1991 out of the defendants' solicitation and sale to plaintiffs, among others, of limited partnership "units" in the Lehigh Valley Physicians Imaging Center ("LVPIC"), a Magnetic Resonance Imaging (MRI) center located in Bethlehem, Pennsylvania.[1] Defendants Zeg-

---

1. An MRI is used to perform sophisticated diagnostic radiologic studies on referred patients. At the per-unit price of $25,000, plaintiffs David and Susan Gubitosi invested $25,000 for one unit; plaintiffs William DeFeo and Charles

eye, Karoly and Steckel, in addition to owning several units in the limited partnership, were also the sole shareholders and controlling parties in ZPR Investments, Inc., which at all relevant times was the general partner of LVPIC. ZP Investments, Inc., in turn, is the general partner of two similar limited partnerships (CHPIC and WVPIC) operating MRI Centers in Camp Hill and the Wyoming Valley, Pennsylvania. ZP's sole shareholders were defendants Zegeye and Karoly.[2]

In soliciting plaintiffs' investments, plaintiffs reviewed a Confidential Offering Memorandum and Agreement of Limited Partnership supplied by defendants. Under these documents, the limited partnership was to have a "life" of only five years and was scheduled to terminate on October 31, 1996. Among the representations made in the Confidential Offering Memorandum (hereinafter "COM"), was the following statement upon which all of the plaintiffs allegedly relied in deciding to invest in the limited partnership:

*Partnership Business*

The Partnership will be formed, if all Units in the Offering are sold as herein described, to establish, equip and operate the Center through which magnetic resonance imaging (MRI) services will be offered. In connection with the establishment and operation of the Center, the Partnership will enter into a lease for space in which the Center will be located and will make substantial leasehold improvements therein. Also the Partnership will enter into a lease-purchase agreement covering the purchase, from Hitachi, of the MRI unit, and the purchase of the 3–D color reconstruction work station (collectively the "System"), pursuant to which the entire acquisition cost of the System will be financed. . . .

*Acquisition of System*

The partnership intends to acquire the System pursuant to a lease-purchase agreement at a total cost assumed to be $1,850,000, excluding sales tax. It is presently anticipated by the General Partner

that, pursuant to the lease-purchase agreement, the Partnership will lease the System for a term of 5 years commencing upon delivery of the System as quickly as same can be effected following formation of the Partnership. Other terms of the financing of the acquisition of the System are anticipated to be an interest rate of approximately 12.5% and a purchase option, entitling the Partnership to buy the System for $1.00, at the end of the 5–year lease term. . . . .

(Confidential Offering Memorandum, at pp. 25–27).

These representations were echoed in ¶ 9.4(f) of the Limited Partnership Agreement:

(f) The securing for the Partnership by the General Partner of financing of the acquisition of the System, at an anticipated cost in the principal amount of $1,850,000, pursuant to a lease-purchase agreement, which financing will require the guarantee of the General Partner and/or of its shareholders and will be non-recourse to the Limited Partners. It is anticipated that such financing will have a term of sixty (60) months requiring equal monthly payments of interest and principal, will have an interest rate of approximately twelve and one-half (12.5%) percent, and will provide an option for the Partnership to purchase the System at the end of the term for $1.00.

Contrary to the foregoing provisions in both the Limited Partnership Agreement and the COM and unbeknownst to the limited partners, on September 27, 1991.after securing the necessary financing, Defendants Zegeye, Seleshi, Karoly, Angstadt and Steckel took title to the MRI themselves and, on October 31, 1991 entered into a Lease Agreement with LVPIC for the MRI for a five-year term at the rate of the monthly financing cost plus $6,000 over the lease term. Also contrary to the COM and the Limited Partnership Agreement, this lease did not provide for the Limited Partnership's pur-

---

McConnell each purchased two units for total investments of $50,000 apiece.

**2.** Plaintiffs contend that these defendants unlawfully misappropriated and transferred funds belonging to plaintiff LVPIC to the Camp Hill and Wyoming Valley entities through ZP Investments.

chase of the MRI at the end of the lease term.

In addition to these activities, Plaintiffs allege that between 1991 and March, 1995, the defendants mailed them income statements which showed that LVPIC was paying a "Lease Expense" and "Maintenance Expense." These expense entries further led plaintiffs to believe that the lease-purchase arrangement provided that the Plaintiff Limited Partnership would eventually acquire the MRI machine at the end of the lease term for $1.00. It was not until August 24, 1994 when they received a letter from an attorney representing defendants Karoly and Steckel in a related state court action against defendant Zegeye[3], that Plaintiffs were advised that the MRI equipment was not being purchased by the LVPIC Limited Partnership but had instead been purchased by the individual defendants.

Based upon these facts, on July 11, 1996, Plaintiffs brought this action alleging violations of the Racketeer Influenced Corrupt Organizations Act, (RICO) 18 U.S.C. § 1961, et. seq., conspiracy, conversion, breach of fiduciary duty, and seeking punitive damages for willful, malicious, reckless and intentional conduct and an accounting. On October 23, 1996, this Court granted in part the defendants' motions to dismiss and struck two of the three RICO counts which were premised upon the alleged misappropriation of funds and dismissed plaintiffs' claims of breach of fiduciary duty against defendants Karoly and Angstadt. Defendants now seek the entry of summary judgment in their favor on all of the remaining counts of the complaint.

### Summary Judgment Standards

The standards to be applied by the district courts in ruling on motions for summary judgment are set forth in Fed.R.Civ.P. 56. Under subsection (c) of that rule,

....The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Pursuant to this rule, a court is compelled to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *Aries Realty, Inc. v. AGS Columbia Associates,* 751 F.Supp. 444 (S.D.N.Y. 1990).

Generally, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the non-moving party and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital,* 760 F.Supp.

---

**3.** In this related action, filed in the Court of Common Pleas of Lehigh County, defendants Karoly and Steckel sought monetary and injunctive relief against defendant Zegeye for Zegeye's removal of the financial and other records of ZPR and the three limited partnerships (LVPIC, CHPIC and WVPIC) in which the parties had joint interests. In resolution of that matter, defendant Zegeye agreed to buy out Karoly's (and his wife, Laura Angstadt) and Steckel's interests in ZPR and LVPIC. Subsequent to the settlement of that action and as the result of the plaintiffs' refusal to sign an "Amendment Agree-ment to Agreement of Limited Partnership" altering the Limited Partnership Agreement to reflect that the individual defendants and not the limited partnership owned the MRI, defendant Zegeye, acting on behalf of ZPR, filed suit in the Northampton County Common Pleas Court against plaintiffs and all of the other limited partners. That suit sought a declaratory judgment that the $1.00 purchase option in the original limited partnership agreement was the result of a drafting "mistake" and that ownership of the MRI was properly vested in the individual defendants.

1120 (E.D.Pa.1991); *Schillachi v. Flying Dutchman Motorcycle Club*, 751 F.Supp. 1169 (E.D.Pa.1990).

Where, however, "a motion for summary judgment is made and supported [by affidavits or otherwise], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against [it]." Fed.R.Civ.P. 56(e). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and it cannot rely on unsupported assertions, conclusory allegations, or mere suspicions or beliefs in attempting to survive such a motion. *Tziatzios v. U.S.*, 164 F.R.D. 410, 411, 412 (E.D.Pa.1996) citing *Celotex v. Catrett, supra*, 477 U.S. at 325, 106 S.Ct. at 2553–54, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202; *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3rd Cir.1989).

### *Discussion*

1. **Application of the Private Securities Litigation Reform Act to bar Plaintiffs' RICO claims.**

Defendants first argue that since plaintiffs' RICO claim is premised upon an alleged fraud in the sale of the limited partnership units, they are entitled to judgment as a matter of law under Section 107 of the Private Securities Litigation Reform Act, Pub.L. 104–67 ("SRA"). That Act, which took effect on December 22, 1995, amended § 1964(c) of the RICO statute, 18 U.S.C., in that the statute now states:

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

Specifically, Defendants assert that since Plaintiffs' case is premised upon their purchase of the limited partnership units in reliance upon the Confidential Offering Memorandum and Limited Partnership Agreement which would have been actionable as fraud in the purchase and sale of a security under the Securities Act of 1933, 15 U.S.C. § 77b,[4] defendants are entitled to judgment as a matter of law as to the plaintiffs' remaining RICO count. In opposition, Plaintiffs contend that the Securities Litigation Reform Act does not apply to this action because their cause of action did not arise in connection with the purchase or sale of securities and because the Act cannot be given retroactive application to bar a claim and impair rights which a party possessed when he acted.

■ The U.S. Supreme Court has decreed that inasmuch as Section 10(b) and Rule 10b–5[5] outlaw the use "of any manipulative or

---

**4.** Specifically, 15 U.S.C. § 77b(a)(1) defines "security" to mean:

"... any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest

therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

**5.** Specifically, Section 10(b), 15 U.S.C. 78j(b) states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instru-

deceptive device or contrivance, in connection with the purchase or sale of any security" they must be read flexibly—not technically or restrictively. *Superintendent of Insurance of the State of New York v. Bankers Life and Casualty Company,* 404 U.S. 6, 10, 12, 92 S.Ct. 165, 168, 169, 30 L.Ed.2d 128 (1971). To state a cause of action under these sections then, there must be: (1) a material misrepresentation or fraud, (2) a purchase or sale of a security, and (3) such misrepresentation or fraud must have been rendered in connection with the purchase or sale of a security. *Ketchum v. Green* 557 F.2d 1022, 1025 (3rd Cir.1977); *Sanzone v. Phoenix Technologies, Inc.,* 1990 WL 50732 at *4 (E.D.Pa.1990).

In *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) and again in *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) the Court held that a transaction constituted an "investment contract" for purposes of the Securities Act only if there had been "an investment of money in a common enterprise with profits to come solely from the efforts of others." 328 U.S. at 301, 66 S.Ct. at 1104. Applying this rationale, most courts which have had occasion to consider the issue with which we are now presented have concluded that the sale of an interest in a limited partnership constitutes the sale of a security within the meaning of the Securities Acts. *See: Cohen v. Goodfriend,* 642 F.Supp. 95, 98–99 (E.D.N.Y.1986); *Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher,* 635 F.Supp. 18, 21 (E.D.Pa.1985); *Kroungold v. Triester,* 407 F.Supp. 414, 417 (E.D.Pa.1975); *Bayoud v. Ballard,* 404 F.Supp. 417, 422, n. 4 (N.D.Tex.1975). *See Also: Penturelli v. Spector, Cohen, Gadon & Rosen,* 779 F.2d 160 (3rd Cir.1985) (sale of fractional undivided interests in coal mining operations was a sale of a security for purposes of the antifraud provisions of securities laws).

Inasmuch as the record in the case at hand evinces that the plaintiffs did nothing with respect to the operation of LVPIC other than invest money by purchasing their units, it is clear to this court that the sale of the limited partnership units was in practical application a sale of a "security" under the *Howey* test described above. We thus turn next to the issue of whether the fraud which was allegedly visited upon the plaintiffs occurred "in connection with" the purchase of their limited partnership units.

The "in connection with" language of section 10(b) has been interpreted as requiring some causal connection between the alleged fraud and the purchase or sale of a security such that the plaintiff must have suffered an injury as a result of deceptive practices touching the purchase or sale of securities. *Angelastro v. Prudential–Bache Securities,* 764 F.2d 939, 942–943 (3rd Cir.1985) citing, *inter alia, Bankers Life,* 404 U.S. at 12–13, 92 S.Ct. at 169–170; *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 194 (3rd Cir. 1976) and *Liberty National Insurance Holding Co. v. Charter Co.,* 734 F.2d 545, 555 (11th Cir.1984). Such an actionable causal nexus has been found where there was a churning of brokerage accounts, a broker failed to explain risks of trading on margin, an inducement was offered to tender stocks by false promise of future employment, and a

mentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5, 17 C.F.R. § 240.10b–5 similarly provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instru-

mentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

> (a) to employ any device, scheme or artifice to defraud,
>
> (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

broker-trainee was misrepresented to be a stockbroker and portfolio management specialist. *See, e.g.: Costello v. Oppenheimer & Co.,* 711 F.2d 1361, 1368 (7th Cir.1983); *Thompson v. Smith Barney, Harris Upham & Co.,* 709 F.2d 1413 (11th Cir.1983); *McGrath v. Zenith Radio Corp.,* 651 F.2d 458 (7th Cir.), *cert. denied,* 454 U.S. 835, 102 S.Ct. 136, 70 L.Ed.2d 114 (1981); *Marbury Management, Inc. v. Kohn,* 629 F.2d 705 (2nd Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980); *In re Catanella and E.F. Hutton and Co.,* 583 F.Supp. 1388, 1405, 1410–1411 (E.D.Pa.1984); *Steinberg v. Shearson Hayden Stone, Inc.,* 546 F.Supp. 699 (D.Del.1982), all cited in *Angelastro, supra.*

■ Applying these principles to the transactions at issue in this case, we find that plaintiffs' RICO claims are predicated in part upon the misrepresentations regarding the lease-purchase of and title to the MRI machine set forth in the Confidential Offering Memorandum and the Limited Partnership Agreement and that these alleged misrepresentations were clearly made "in connection with" the purchase and sale of the limited partnership units. It shall therefore be necessary for us to determine the applicability of the December, 1995 amendment of the Private Securities Litigation Reform Act to this part of plaintiffs' RICO claim.

In Section 108 under the heading of "Applicability," Congress specifically addressed the reach of the SRA, providing that "[t]he amendments made by this title shall not affect or apply to any private action arising under Title I of the Securities Exchange Act of 1934 or Title I of the Securities Exchange Act of 1933, commenced before and pending on the effective date of this Act." The applicability provision, however, deals only with the amendments as they apply to private actions arising under Title I of the Securities Exchange Act of 1934 or Title I of the Securities Exchange Act of 1933 and not the amendments as they apply to RICO. *Hockey v. Medhekar,* 1997 WL 203704 (N.D.Cal.1997) at *3–4.

■ We are here presented with the vexing issue of whether the SRA amendments to § 1964(c) of RICO should be applied to bar a claim based on conduct which occurred prior to the effective date of the Act but upon which suit was not filed until some eight months after the amendment took effect. In the absence of binding appellate precedent on this precise issue, our analysis therefore begins with an examination of *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

In that case, the issue confronting the Supreme Court was whether the Civil Rights Act of 1991 should have been retroactively applied to a Title VII sexual harassment case then pending on appeal. In reconciling the apparent tension between the two seemingly contradictory canons that a court must apply the law in effect at the time it renders its decision and the axiom that statutory retroactivity is not favored, the Court decreed:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280, 114 S.Ct. at 1505.

As this rationale has been applied to the amendment at issue here, the courts have been split in their holdings with some finding against retroactive application and others holding retroactive application to be appropriate. However, whether applied to cases pending on the Act's effective date or to those filed afterward, one common theme emerges: If the SRA took effect after the statute of limitations had run on a plaintiff's prospective securities fraud claim such that application of the amendment would operate

to bar both a securities fraud claim and a RICO claim, the Act has not been retroactively applied. *See: Hockey v. Medhekar, supra; McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 976 F.Supp. 293 (D.N.J.1997); *ABF Capital Management v. Askin Capital Management*, 957 F.Supp. 1308 (S.D.N.Y. 1997); *Rowe v. Marietta Corp.*, 955 F.Supp. 836 (W.D.Tenn.1997); *Klein v. Boyd*, 1996 WL 675554 (E.D.Pa.1996); *Mathews v. Kidder, Peabody & Co.*, 947 F.Supp. 180 (W.D.Pa.1996); *Baker v. Pfeifer*, 940 F.Supp. 1168 (S.D.Ohio 1996); *In re Prudential Securities Incorporated Limited Partnerships Litigation*, 930 F.Supp. 68 (S.D.N.Y.1996); *District 65 Retirement Trust for Members of the Bureau of Wholesale Sales v. Prudential Securities, Inc.*, 925 F.Supp. 1551 (N.D.Ga. 1996).

This rationale appears to this Court to be sound as well as fair and we shall therefore next examine when the statute of limitations ran on the plaintiffs' securities fraud claims. In so doing, we are compelled to take note of the Supreme Court's decision on this point in *Lampf, Pleva, Lipkind, et.al. v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). It was in that case that the Supreme Court definitively held that litigation instituted pursuant to § 10(b) and Rule 10b–5 must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation has occurred. 501 U.S. at 364, 111 S.Ct. at 2782. *See Also: Hansen v. Shearson/American Express, Inc.*, 890 F.Supp. 416 (E.D.Pa. 1995); 15 U.S.C. § 77m.

In this case, the pleadings and record evince that the conduct upon which plaintiffs' claims are based occurred between July/August, 1991 when the Confidential Offering Memorandum and Limited Partnership Agreement were delivered to plaintiffs and March, 1995 when the last income statements for the limited partnership were mailed. (Pl's Complaint, ¶¶ 22, 26, 29, 32–34, 39, 43–44). Viewing the pleadings and evidence in the light most favorable to the plaintiffs as the non-moving parties, it was not until they received the August 24, 1994 letter from the attorney representing Karoly and Steckel in the related state court actions that plaintiffs learned of the misrepresentations in the offering materials and that title to the MRI had been taken by the individual defendants and not the limited partnership. (*See, e.g.*, Complaint, ¶¶ 47–48). It therefore appears that plaintiffs had to institute suit for the misrepresentations contained in the offering materials under Section 10(b) and Rule 10b–5 by no later than August 24, 1995. Thus, by the time the SRA amended § 1964(c) in December, 1995, the plaintiffs' securities fraud claim was time-barred. The only claim which plaintiffs could pursue from that point onward against defendants for their alleged fraudulent conduct was under RICO, with its four-year statute of limitations. Given that the application of the SRA amendment would therefore have the effect of impairing the plaintiffs' ability to recover for actions which may have violated federal law, we shall decline to allow the statute to function retroactively. *In re Prudential Securities Inc. Limited Partnerships Litigation, supra*, 930 F.Supp. at 79, citing *Landgraf*, 114 S.Ct. at 1505.

As briefly noted above, subsequent to the plaintiffs' purchase of their limited partnership units, the record also reflects that between 1991 and March, 1995, Defendants did mail false and misleading income and expense statements, a proposed Amendment Agreement to Agreement of Limited Partnership, and letters threatening litigation and the withholding of distribution checks if the proposed limited partnership amendment was not signed, among other things. Inasmuch as the record evidence is unclear as to whether these mailings were undertaken for the purpose of perpetuating the earlier, securities-related fraud, we find that there is a material issue of fact as to whether these subsequent acts were in fact undertaken "in connection with" the defendants' sale to plaintiffs of their units in LVPIC. Accordingly, regardless of whether or not the SRA is applied to the RICO claims premised upon the representations made in the offering materials, we are compelled to permit the jury to determine whether the subsequent mailings constituted separate RICO predicate acts in and of themselves or were undertaken in connection with the purchase and sale of a security. Consequently, these claims shall

therefore survive defendants' summary judgment and supplemental summary judgment motions as well.

### 2. Plaintiffs' standing to maintain a derivative claim on behalf of the Limited Partnership.

■ Defendants also assert that while plaintiffs may have standing to recover damages for the losses which they personally sustained, they do not have standing to sue for the losses suffered by the limited partnership itself in that they have not met the requirements under Pennsylvania law to bring a derivative suit for LVPIC.

The Pennsylvania Revised Uniform Limited Partnership Act, 15 Pa.C.S. § 8501, *et seq.* delineates the parameters pursuant to which suit may be brought by a limited partner on behalf of a limited partnership of which he is a partner. As a threshold matter, "[i]n a derivative action under this subchapter, the plaintiff must be a partner at the time of bringing the action and (1) at the time of the transaction of which he complains; or (2) his status as a partner shall have devolved upon him by operation of law or pursuant to the terms of the partnership agreement from a person who was a partner at the time of the transaction." 15 Pa.C.S. § 8592.

Under § 8591 of the Act,

A limited partner may bring an action in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed. The derivative action may not be maintained if it appears that the plaintiff cannot fairly and adequately represent the interests of the limited partners in enforcing the rights of the partnership.

■ Generally speaking, to plead a derivative claim under the Limited Partnership Act, the complaint must set forth with particularity the effort of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort. 15 Pa.C.S. § 8593. Where, however, the alleged harm being sued upon was suffered directly by the individual limited partners, it is not necessary that a derivative claim be asserted—the limited partners have standing to sue on their own behalf for damages which they themselves individually suffered. *See: Kenworthy v. Hargrove*, 855 F.Supp. 101, 107 (E.D.Pa.1994), citing *Ceribelli v. Elghanayan*, 990 F.2d 62, 64 (2nd Cir.1993) (although limited partner plaintiffs cannot claim an injury unique to them resulting from defendants' alleged improper and unlawful activities directed against the private bank after limited partners had already invested their money, they had standing to claim an injury to them from the representations that allegedly induced them to change their status from potential to actual investors).

Applying these principles to this case, we find that the plaintiffs' alleged injuries are both individual and derivative of the LVPIC limited partnership. Despite the derivative nature of some of plaintiffs' claims, however, there are no allegations anywhere in the plaintiffs' complaint that any demand was made on General Partner ZPR to institute suit to recover the MRI machine prior to the filing of this action. Similarly, plaintiffs nowhere aver that the general partner refused to bring such an action or that any effort to cause the general partner to bring such an action is not likely to succeed. It is thus incumbent upon us to consider whether there are any grounds to excuse plaintiffs' failure to make the pre-requisite pre-complaint demand on the general partner here.

■ Indeed, to excuse demand under Pennsylvania law, the plaintiff must allege that a majority of the board of directors engaged in acts that are fraudulent—merely alleging erroneous business judgment is not sufficient. *Garber v. Lego*, 11 F.3d 1197, 1203 (3rd Cir.1993) citing *Kelly v. Thomas*, 234 Pa. 419, 83 A. 307 (1912). Fraud, has been said to "consist of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth or look or gesture." *Id.*, citing *Moser v. DeSetta*, 527 Pa. 157, 163, 589 A.2d 679, 682 (1991).

In this action, it is evident from the pleadings and the record evidence thus far produced that a demand upon the general partner, ZPR, and its shareholders and directors would clearly have been futile. To be sure, all of ZPR's shareholders and directors (Zegeye, Karoly and Steckel) are the perpetrators of the fraudulent acts alleged and are the defendants named in the plaintiffs' complaint. We therefore find that the plaintiffs' failure to make a pre-complaint demand that ZPR and the other defendants institute suit on behalf of LVPIC is excused. To the extent that plaintiffs' are seeking to recover damages on behalf of both themselves individually and on behalf of the limited partnership itself, then, these claims are also properly submitted to the jury for determination. Defendants' motion and supplemental motion for summary judgment as to any derivative claims are therefore denied.

### 3. Plaintiffs' state/common law claims.

Defendants next contend that there is insufficient evidence to support plaintiffs' remaining state law claims against them for conspiracy, conversion, breach of fiduciary duty, estoppel,[6] and seeking punitive damages and an accounting. After carefully reviewing the volumes of material which all of the parties have presented both in support of and contra to the motions and supplemental motions for summary judgment, this Court finds that genuine issues of material fact exist as to each of these additional claims. Accordingly, these claims must likewise be submitted to a jury for resolution. For these reasons, defendants' motions and supplemental motions for summary judgment are also denied as to the pendant common law claims enumerated above.

An order follows.

6. By motion filed September 12, 1997, Defendants Karoly, Angstadt, and Steckel request leave to amend their answer to the complaint to include, *inter alia*, the affirmative defense of equitable estoppel. Specifically, it appears to be moving defendants' position that the plaintiff limited partners were well aware of the state court litigation between Karoly, Steckel and Zegeye yet failed to make any complaint as to the ownership of the MRI or as to the manner in

*ORDER*

AND NOW, this day of December, 1998, upon consideration of the Defendants' Motions for Summary Judgment and Supplemental Motions for Summary Judgment and Plaintiffs' Responses thereto, it is hereby ORDERED that the Motions are DENIED in accordance with the foregoing Memorandum Opinion.

which distributions from LVPIC were being made. Because plaintiffs failed to make their dissatisfaction known when the various suits were proceeding through the state court and when defendants Karoly and Steckel had some opportunity to respond through their then-ownership and control interests in ZPR, moving defendants now contend that plaintiffs should be equitably estopped from pursuing this suit against them.