**Frank E. SCOTT, Plaintiff–Appellant,**

**v.**

**Bernard BOOS; Locke Goldsmith; Edward White; Johann Plamenig; Robert Ballard; Harold D.J. Gallison; La Jolla Capital Corporation, a Nevada corporation; Brian Gracey; American Wollastonite Mining Corporation, fka**

**White Plains Resources Corporation, a publicly traded British Columbia corporation; Does, I through XX, inclusive, Defendants–Appellees.**

**No. 98–15877.**

United States Court of Appeals, Ninth Circuit.

Submitted on March 14, 2000[1]

Filed June 8, 2000

---

1. The panel finds this case appropriate for submission without oral argument pursuant to Fed. R.App. P. 34(a)(2).

Bryan R. Clark, McDonald, Carano, Wilson, McCune, Bergin, Frankovich & Hicks, LLP, Las Vegas, Nevada for the plaintiff-appellant.

Bernard Boos, Burnaby, Canada, in proper person, defendant-appellee.

Locke Goldsmith, no appearance, no address.

Edward White, Burnaby, Canada, in proper person, defendant-appellee.

Johann Plamenig, no appearance, no address.

Robert Ballard, Burlington, Massachusetts, in proper person, defendant-appellee.

James C. Weaver, San Diego, California, for defendants-appellees Harold Gallison and LaJolla Capital Corporation.

Bruce Judd, Wright, Judd & Winkler, Las Vegas, Nevada, for defendant-appellee Brian Gracey and American Wollastonite Mining.

Before: POLITZ,[2] REINHARDT, and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

Section 107 of the Private Securities Litigation Reform Act of 1995 ("PSLRA")

---

**2.** Honorable Henry A. Politz, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

amended 18 U.S.C. § 1964(c) to eliminate as a predicate for civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") any conduct actionable as fraud in the purchase or sale of securities. *See* Pub.L. No. 104–67, § 107, 109 Stat. 737, 758 (1995). Frank Scott brought a civil RICO claim alleging fraud in connection with the sale of securities. We must decide whether section 107 of the PSLRA bars civil RICO claims filed after the PSLRA's effective date based on conduct occurring prior to its effective date. Because we hold that section 107 cannot be applied retroactively, we reverse.

## BACKGROUND

Frank Scott ("Scott") was the sole shareholder of Scott Walker Boudwin, Inc. ("Scott Walker"), a Nevada corporation. This corporation owned various leasehold interests within the state. In May 1993, Bernard Boos ("Boos"), acting as an agent for the White Plains Resources Corp. ("White Plains"), approached Scott about acquiring his corporation to develop a plant for processing wollastonite, a substance which has a wide variety of uses.

After a series of negotiations in which Scott alleges that Boos and others fraudulently represented the value of White Plains, Scott agreed to trade his shares of Scott Walker for shares of White Plains, the predecessor of the American Wollastonite Mining Corp.

The sale was approved by the Vancouver Stock Exchange and the board of directors of American Wollastonite in January 1994, and Scott became the Chairman of the Board of American Wollastonite. By March of 1994, Scott concluded that the wollastonite project was not proceeding as planned and engaged the services of an expert mining engineer. That engineer reported that the geologist hired by Boos was not licensed in Nevada, certain documents which should have been filed with the state had not been filed, and accurate maps of the drilling markers were missing. Sometime before December 15, 1995, Scott tried unsuccessfully to convince the board of directors to conduct a due diligence investigation, after which he resigned as Chairman.

On February 13, 1997, Scott filed an action in the United States District Court against Boos and 23 others,[3] alleging violations of (1) the RICO statutes, 18 U.S.C. § 1962(a), (b), and (c); (2) conspiracy to violate 18 U.S.C. § 1962(a), (b), and (c); (3) violation of Nevada's RICO statutes; (4) conspiring to violate Nevada's RICO statutes; and (5) common law fraud, deceit, and misrepresentation. The district court dismissed claims 1–4, finding that the passage of the PSLRA precluded claims 1 and 2, and declining to exercise its supplemental jurisdiction over claims 3 and 4. Claim 5 is still pending. Following district court certification, Scott filed this interlocutory appeal.

Section 107 of the PSLRA amends 18 U.S.C. § 1964(c) to state that "[a]ny person injured in his business or property by reason of a violation of [RICO] may sue . . . except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]."[4] The PSLRA became effective on December 22, 1995.

## STANDARD OF REVIEW

We review de novo whether a statute may be applied retroactively. *See Means v. Northern Cheyenne Tribal*

---

**3.** At this time, Scott has settled with several of these defendants, including three who are parties to this appeal.

**4.** The statute of limitations for RICO is four years, *see Agency Holding Corp. v. Malley–Duff & Assoc.*, 483 U.S. 143, 156, 107 S.Ct.

2759, 97 L.Ed.2d 121 (1987), while the statute of limitations for violations of securities fraud are one year from discovery ("inquiry notice") and within three years of the violation, 15 U.S.C. § 78i(e) (1994). RICO also allows recovery of treble damages.

*Court,* 154 F.3d 941, 943 (9th Cir.1998); *Chenault v. United States Postal Serv.,* 37 F.3d 535, 537 (9th Cir.1994). A district court's factual findings on all jurisdictional issues must be accepted unless clearly erroneous. *See United States ex rel. Lujan v. Hughes Aircraft Co.,* 162 F.3d 1027, 1030 (9th Cir.1998). We will not overturn a district court's factual findings unless there is a definite and firm conviction that a mistake has been made. *See id.*

## THE TEST FOR RETROACTIVITY

■ The Supreme Court teaches that there is a presumption against retroactive application of legislation. *See Landgraf v. USI Film Products,* 511 U.S. 244, 265, 114 S.Ct. 1483 (1994); *Bowen v. Georgetown University Hosp.,* 488 U.S. 204, 207, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and conform their conduct accordingly; settled expectations should not lightly be disrupted." *Landgraf,* 511 U.S. at 265, 114 S.Ct. 1483; *see also General Motors Corp. v. Romein,* 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) ("Retroactive legislation presents problems of unfairness ... because it can deprive citizens of legitimate expectations...").

■ In *Landgraf,* the Supreme Court provided a test for determining whether a federal statute applies retroactively:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e. wheth-

er it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280, 114 S.Ct. 1483; *see Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Thus, the first step in the analysis is to ask whether Congress has expressly provided that the statute in question should apply retroactively or prospectively. If Congress has made its intent express, the statute should be applied accordingly. If not, the second step requires an examination of whether the statute has retroactive effect. If it does, the presumption against retroactive application applies. This presumption can only be rebutted by clear congressional intent to the contrary. *See also Mathews v. Kidder, Peabody & Co.,* 161 F.3d 156, 160–61 (3d Cir.1998), *cert. denied,* 526 U.S. 1067, 119 S.Ct. 1460, 143 L.Ed.2d 546 (1999) (commenting that *Lindh* modified the *Landgraf* test but essentially applying this same test).

The Third and Seventh Circuits have held that section 107 of the PSLRA does not prohibit civil RICO claims premised on securities fraud that were pending on the effective date of the PSLRA. The Seventh Circuit did not engage in a detailed analysis of the retroactivity of the PSLRA; rather, it merely cited sections 107 and 108[5] of the PSLRA and stated that "the amendment is inapplicable to suits, such as this one, that were pending when the new law was passed, provided that the suit arose under the securities laws." *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor,* 115 F.3d 1332, 1337–38 (7th Cir.1997).

---

**5.** Section 108 provides:

The amendments made by this title shall not affect or apply to any private action arising under title 1 of the Securities and

Exchange Act of 1934 or title 1 of the Securities Act of 1933, commenced before and pending on the date of enactment of this act.

Apparently it concluded that the statutory language on its face clearly implied that the PSLRA did not apply retroactively to suits pending on its effective date.

The Third Circuit conducted a more detailed review tracing through the steps of the *Landgraf–Lindh* analysis. *See Mathews*, 161 F.3d at 156. The nature of the Third Circuit's analysis appears to apply equally to cases where the claim was filed after the PSLRA's effective date based on conduct occurring before that date.

### A. Statutory Language: Has Congress Expressly Prescribed the Statute's Proper Reach?

■ The first step in the *Landgraf* test is whether Congress expressly prescribed the temporal reach of section 107 of the PSLRA (the "RICO amendment"). Section 108 of the PSLRA provides that the amendments made under the PSLRA "shall not affect or apply to any private action arising under title 1 of the Securities and Exchange Act of 1934 or title 1 of the Securities Act of 1933, commenced before or pending on the date of enactment of this act." This section does not, however, discuss actions arising under RICO. Additionally, no other provision of the PSLRA expressly discusses its temporal reach as applied to RICO. Therefore, nothing in the PSLRA can be construed as an express provision for the temporal reach of the RICO amendment. *See Mathews*, 161 F.3d at 162; *Kolfenbach v. Mansour*, 36 F.Supp.2d 1351, 1353 n. 7 (S.D.Fla.1999) (listing cases and stating that "[o]ther courts examining this issue have uniformly concluded that there is no language in the statute either permitting or forbidding retroactive application of Section 1964(c) [RICO].").

The defendants seem to argue, however, that because the limitation in section 107 of the PSLRA is not limited in time, it should apply retroactively to past conduct. *See ABF Capital Management v. Askin Capital Management*, 957 F.Supp. 1308, 1320 (S.D.N.Y.1997); *see also Scott v.* *Steingold*, 1998 WL 704287 *1, *5 (N.D.Ill. Sept.30, 1998) (adopting rationale in *ABF Capital*). Section 107 provides in pertinent part that "no person may rely [on securities fraud] to establish a violation of [RICO.]" The defendants argue that "[t]he statute is not limited to future conduct, and its prohibition is absolute: no person may rely on securities fraud to make out a RICO claim." *ABF Capital*, 957 F.Supp. at 1320. The fact that the statute applies to all people and is very clear in its mandate, however, does not necessarily mean that it should apply retroactively. This rationale would allow for inequitable results: a person who has been through a long trial and whose case is on appeal, for example, could no longer rely on securities fraud to establish a violation of RICO.

We conclude that Congress has not expressly provided for the temporal reach of the RICO amendment.

### B. Retroactive Effect

Having concluded that there is no express provision concerning the temporal reach of the RICO amendment, we turn to whether the statute has a retroactive effect.

A statute has retroactive effect if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483. The *Landgraf* court further explained that "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance" in determining retroactive effect. 511 U.S. at 270, 114 S.Ct. 1483. Because the RICO amendment does not increase a party's liability for past conduct or impose new duties with respect to transactions already completed, we next consider whether the RICO amendment impairs the rights a party possessed when he acted.

It appears that the PSLRA has retroactive effect because prior to the PSLRA a

plaintiff had a RICO claim based on a defendants' alleged securities fraud, while afterwards a plaintiff does not.[6] *See Mathews,* 161 F.3d at 163. In other words, prior to the amendment, the legal consequences of violation of the securities laws included liability under the securities laws and under RICO, while after the amendment, the legal consequences only include liability under the securities laws.

The defendants argue that the RICO amendment does not have retroactive effect because it merely altered a jurisdictional statute and jurisdictional changes do not have retroactive effect. In *Landgraf,* the Court noted that "[a]pplication of a new jurisdictional rule usually takes away no substantive right but simply changes the tribunal to hear the case.... [J]urisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties." *Landgraf,* 511 U.S. at 274, 114 S.Ct. 1483 (quotations omitted); *see Means,* 154 F.3d at 947. For example, in *Ex parte Collett,* 337 U.S. 55, 69 S.Ct. 944 (1949), the Court held that 28 U.S.C. § 1404(a) applied retroactively to govern the transfer of an action because transfer of actions is clearly jurisdictional.

In contrast, the RICO amendment does not merely change the tribunal that is to hear the case, it affects all attempts to bring RICO claims based on securities fraud in federal and state court. Although the RICO amendment on its face changes a federal jurisdictional statute, 18 U.S.C. § 1964(c), the Supreme Court has held that section 1964(c) provides concurrent state jurisdiction over RICO actions. As such, the RICO amendment "would appear to affect all securities fraud-based RICO claims." *Mathews,* 161 F.3d at 164.

Further, the relevant intent of the PSLRA was "to address a significant number of frivolous actions based on alleged securities law violations." *Id.* (quoting statement by representative who introduced the amendment, 141 Cong. Rec. H2771, March 7, 1995). Therefore, it did not seek to "simply change[ ] the tribunal to hear the case;" the intent was substantive—to deprive plaintiffs of the right to bring securities fraud based RICO claims.

The *Mathews* court also noted that the Supreme Court's decisions in *Landgraf* and *Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), further support a conclusion that the RICO amendment is a substantive statute. *See Mathews,* 161 F.3d at 165–66. In *Landgraf,* the Court held that a change in remedy from back pay to compensatory damages was seen as creating a new cause of action and impairing a party's rights. 511 U.S. at 281. Thus, the *Mathews* court analogized, a change from treble damages under RICO to compensatory damages under the federal securities laws must also be seen as impairing a party's rights.

Similarly, in *Hughes,* the Court explained that even if a statute was phrased as a jurisdictional statute, it may have a retroactive effect. *See* 520 U.S. at 951, 117 S.Ct. 1871; *Mathews,* 161 F.3d at 165. There, a statute which expanded the universe of plaintiffs who could bring qui tam actions under the False Claims Act was held to have retroactive effect. *See Hughes,* 520 U.S. at 950, 117 S.Ct. 1871. The *Mathews* court noted that "[t]he RICO amendment, like the amendment at issue in *Hughes,* does not simply allocate jurisdiction among fora, determining where a claim might be brought; rather, it destroys jurisdiction where it previously existed; it thus speaks not just to the power of a particular court but to the substantive rights of the parties as well." 161 F.3d at 166 (quotations omitted).

---

6. The defendants also argue that Scott did not have an "inalienable right" to sue under RICO by entering into a securities agreement prior to the effective date of the PSLRA. The defendants misconstrue what actions are rele-vant to this question. It is not important that Scott entered into the agreement before the effective date of the PSLRA, but that the defendants' alleged RICO violations took place before the effective date of the PSLRA.

The defendants next argue that the RICO amendment does not impair the rights a party possessed when that party acted because a plaintiff's right to recover under RICO for securities fraud was an unintended action of RICO. The RICO amendment was merely intended to "correct a mistake." Intended or not,[7] removing the effects of RICO still impairs rights a party once possessed.

The defendants' use of the "correct-a-mistake" argument, however, misinterprets the language in *Landgraf* from which it was taken. *See In re MTC Electronic Technologies Shareholder Litigation*, 74 F.Supp.2d 276, 280–81 (E.D.N.Y. 1999) (referring to *Landgraf*, 511 U.S. at 267, 114 S.Ct. 1483). The Court in *Landgraf* noted that absent violation of a specific constitutional provision (like the Ex Post Facto Clause), "the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." 511 U.S. at 267, 128 L.Ed.2d 229. The Court continued:

> Retroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, *to correct mistakes*, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary. However, a requirement that Congress first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness.

*Id.* at 267–68, 128 L.Ed.2d 229 (emphasis added). Placed in context, all the *Landgraf* court meant to imply is that correcting a mistake is one of the legitimate reasons Congress may have when it makes its intent clear that a statute shall have

retroactive application. The Court did not state that legislation intended to "correct a mistake" has no retroactive effect. *See id.* Thus, even if Congress was intending to correct a mistake, the RICO amendment may still have retroactive effect.

For some reason, however, a handful of lower courts have found the "correct-a-mistake" argument persuasive. *See Rowe v. Marietta Corp.*, 955 F.Supp. 836, 847 (W.D.Tenn.1997) (quoting *Reading Wireless Cable Television Partnership v. Steingold*, Fed. Sec. L. Rep. P 99, 343, 1996 WL 741432 *1 (D.Nev.1996)); *Krear v. Malek*, 961 F.Supp. 1065, 1074 (E.D.Mich.1997) (same); *Reading Wireless*, 1996 WL 741432 at *2 ("[R]etroactivity to correct a mistake is benign and legitimate."). These courts, however, do not fully analyze the retroactive effects of the RICO amendment.

That the RICO amendment has retroactive effect is further supported by an alternative test for retroactive effect endorsed in *Landgraf.* The Court stated that a statute has retroactive effect if "new legal consequences [attach] to events completed before its enactment." 511 U.S. at 270, 114 S.Ct. 1483. If the RICO amendment is applied here, it would attach new legal consequences to events completed before its enactment because prior to the amendment, the legal consequences of engaging in a pattern of racketeering involving securities fraud included federal securities violations and RICO violations; after the amendment, the legal consequences of the same actions only include federal securities violations. *See Mathews*, 161 F.3d at 164; *In re MTC Electronics*, 74 F.Supp.2d at 280.

The defendants next argue that the change in remedy is not sufficient to establish a retroactive effect. They rely on the district court's opinion in *ABF Capital* where the district court stated that the

---

7. Additionally, securities fraud is specifically included in the definition of activities constituting racketeering which implies that securities-based fraud claims were in fact intended consequences of RICO. *See* 18 U.S.C. § 1961(1)(D) (1994); *Mathews*, 161 F.3d at 164.

*Landgraf* test for impairment of a party's rights only applies when a party's rights are vested, explaining that because a party's right in a suit does not vest until it has been reduced to a final judgment,[8] the party cannot complain that a remedy has been taken away. 957 F.Supp. at 1320–21.

This reading of the *Landgraf* test is misleading. *See* Note, The Private Securities Reform Litigation Act of 1995: Retroactive Application of the RICO Amendment, 23 J. Legis. 283, 302 (1997). First, the *Landgraf* Court expressly says that it does not "restrict the presumption against retroactivity to cases involving 'vested rights.'" 511 U.S. at 275 n. 29, 114 S.Ct. 1483. Nowhere in *Landgraf* does the Court define what rights qualify as "rights a party possessed." Further, *Landgraf* cites *United States Fidelity & Guaranty Co. v. United States ex rel. Struthers Wells Co.*, 209 U.S. 306, 28 S.Ct. 537, 52 L.Ed. 804 (1908), for the proposition that a statute restricting a subcontractor's right to recover damages from a prime contractor had retroactive effect. 511 U.S. at 285, 114 S.Ct. 1483. Taking away a plaintiff's right to a remedy under RICO would have the same effect. Finally, although the *ABF Capital* district court characterizes the change effected by the PSLRA as "one in remedy," the PSLRA in fact eliminates RICO as a cause of action.

We conclude that the RICO amendment has retroactive effect.

### C. Legislative History: Clear Congressional Intent

Because we have found that Congress has not expressly provided the statute's temporal reach and that the statute has retroactive effect, the presumption against retroactivity applies unless Congress's intent to the contrary is clear. *See Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483. Our analysis persuades us that there is no clear congressional intent to apply the RICO amendment retroactively.

The defendants argue that by negative implication, section 108 of the PSLRA reveals a congressional intent to apply the statute retroactively. They argue that because RICO was excluded from section 108's express provision that private actions under the 1933 and 1934 Securities Acts should apply prospectively, Congress intended it to apply retroactively.

The defendants' argument is unpersuasive. First, Congress may have only mentioned the amendments to the 1933 and 1934 Securities Acts in Section 108 because these provisions are procedural and without an express provision to provide for their prospective application, these procedural changes would have been applied retroactively. *See Mathews*, 161 F.3d at 167. Because the RICO amendment is not procedural,[9] the normal presumption would be to apply it prospectively. Therefore, Congress did not need to expressly provide for its prospective application. *See id.* Because there is an equally compelling argument that the inference from section 108 implies that the statute should be applied prospectively, the defendants' argument does not reveal Congress's clear intent to apply the statute retroactively. *See id.*

Second, to make their argument, defendants mistakenly rely on a "negative inference" used by the Court in *Lindh*, 521 U.S. at 327, 117 S.Ct. 2059. *Lindh* used a negative inference to find that Congress intended the statute to apply *prospectively*. A negative inference may be used to apply a statute prospectively because there is no traditional presumption against applying a statute prospectively. Concerns about retroactive effect are not relevant and there is no requirement that Congress

---

**8.** This definition of vested rights in itself is subject to criticism. *See, e.g., Kolfenbach*, 36 F.Supp.2d at 1353 (examining this identical question and concluding that party's rights vest when a plaintiff files suit).

**9.** Section B, above, demonstrates that the amendment is substantive.

clearly intended to have a statute apply prospectively. *See Mathews*, 161 F.3d at 166–67; *see also In re MTC Electronic*, 74 F.Supp.2d at 279 ("*Landgraf* demands an 'unambiguous directive' from Congress before a court may apply a statute retrospectively.").

Finally, the Supreme Court in *Landgraf* rejected a negative inference argument that a statute should apply retroactively. *See Landgraf*, 511 U.S. at 259, 261 n. 12; *Mathews*, 161 F.3d at 167. The *Landgraf* Court stated that it "[did] not read either provision as doing anything more than definitively rejecting retroactivity with respect to the specific matters covered by [the provisions'] plain language." 511 U.S. at 261 n. 12, 114 S.Ct. 1483. Because there is such a strong presumption against retroactivity, "it would be strange indeed if Congress had used a silent negative inference to indicate that the RICO amendment should be applied retrospectively." *Mathews*, 161 F.3d at 168–69; *see also In re MTC Electronic*, 74 F.Supp.2d at 279 ("A negative inference from Section 108's exclusion of RICO is an ambiguous directive, if that."); *Baker v. Pfeifer*, 940 F.Supp. 1168, 1177 (S.D.Ohio 1996) ("[I]t strains logic to argue that this 'negative inference' creates the necessary express statement in favor of retroactivity.").

The district court in *ABF Capital*, on the other hand, stated that the legislative history revealed clear congressional intent to apply the RICO amendment retroactively. 957 F.Supp. at 1320. The court quoted two members of the House of Representatives, which it believed suggested that the RICO amendment should apply retroactively. One Representative stated that the PSLRA would "immediately stop" abuses of RICO and another noted that RICO will be removed from all securities litigation "from this point on." *See id.* The latter's statement came in opposition to the introduction of RICO to the

PSLRA, believing that it was hastily added.[10] His statement does not reflect the temporal application of the amendment, rather a general opposition to the inclusion of RICO in the PSLRA. 42 Cong. Rec. H2773 (March 7, 1995).

The other statement, from a Representative who supported the amendment, came in response to this statement. As such, it may be that he merely incorporated the earlier statement. But, it is clear that he understood the amendment to "immediately stop" the "abuses of the civil RICO statute." 42 Cong. Rec. H2774. These statements alone, however, are not enough to reveal a clear congressional intent to apply the statute retroactively. *See Landgraf*, 511 U.S. at 262, 114 S.Ct. 1483 (a few statements in congressional debate cannot be read as reflecting any general agreement). "[I]f Congress seeks to ... reach[ ] back in time to upset settled expectations, it must do so unequivocally and in a way that assures us that it has seriously considered the consequences of such action." *Mathews*, 161 F.3d at 170. The statements in the House debate do not suggest that Congress has "seriously considered the consequences" of applying the statute retroactively. *See Baker*, 940 F.Supp. at 1177; *In re Prudential Securities Inc. Ltd. Partnerships Litigation*, 930 F.Supp. 68, 79–81 (S.D.N.Y.1996).

The defendants finally argue that Congress must have intended to apply the statute retroactively because if not applied retroactively, the statute "would not halt the perceived abuses of RICO it was designed to redress until early the next century." *ABF Capital*, 957 F.Supp. at 1320. The problem with this argument, once again, is that it does not reveal clear congressional intent; it does not show that Congress considered the options and decided to apply the amendment retroactively. The *Landgraf* court explained that even where "retroactive application of a

---

10. In fact, RICO was nowhere in the securities reform bill that went to the Committee; it

was added at the last minute.

new statute would vindicate its purpose more fully ... [this] is not a sufficient reason to rebut the presumption against retroactivity." 511 U.S. at 285–86, 114 S.Ct. 1483. Thus, even if Congress may have wanted the RICO amendment to apply retroactively, we cannot do so absent clear congressional intent. Therefore the presumption against retroactive application applies.

## EFFECTIVE DATE VERSUS DATE OF EVENTS UNDERLYING THE SUIT

■ The defendants argue that irrespective of our determination on retroactivity, the PSLRA must apply to cases filed after its effective date, regardless of when the alleged conduct that serves as the basis for the claim took place. They argue that the pertinent date is the date of filing, not the date of conduct. The *Landgraf* test, however, appears to focus on parties' actions, not the date of filing of the claim. *Landgraf* holds that the retroactive effect of a statute depends on whether it "impairs a party's rights when he acted" or "attaches new legal consequences to events completed before its enactment." 511 U.S. at 270, 280, 114 S.Ct. 1483. Further, the *Landgraf* court only applied the test for retroactivity when a federal statute was "enacted after the events in suit." *Id.* at 280, 114 S.Ct. 1483. The date of filing a claim does not appear relevant to these statements. *See In re MTC Electronic,* 74 F.Supp.2d at 280 n. 3 ("[A]nalysis of retroactive effect pursuant to *Landgraf* turns on when the primary conduct at issue in the suit took place, not when the complaint was filed or claims were raised."); *see also Mueller v. Angelone,* 181 F.3d 557, 566–69 (4th Cir.1999) (holding that amendments to habeas statute could have "retroactive effect" even in cases filed after the amendments' enactment); *Doran v. Compton,* 645 F.2d 440, 442 (5th Cir., Unit A, 1981) (statute does not retroactively apply to causes of action that accrued prior to its effective date).

The defendants also argue that because the decision in *Landgraf* applied to a case pending on enactment, the entire *Landgraf* decision is inapposite to this case. *See In re Industrial Freight Sys., Inc.,* 191 B.R. 825, 828–29 n. 6 (Bkrtcy.C.D.Cal. 1996) (commenting that there is no "retroactivity" analysis unless a case is pending on the effective date of a statute). The *Landgraf* decision, however, does not turn on whether the plaintiff's case was pending on the date of enactment, and its test focuses on the "events" necessary to the suit. 511 U.S. at 280, 114 S.Ct. 1483. That *Landgraf* clearly applies here does not even appear to have been a question for the courts that have examined this issue. All courts examining the question whether the RICO amendment applies to claims filed after its effective date, based on conduct occurring before its effective date, have used the *Landgraf* framework. *See In re MTC Electronic,* 74 F.Supp.2d at 280 n. 3 ("My analysis does not differentiate between those RICO claims pending on the date of the PSLRA's enactment and those raised later by additional plaintiffs."); *Kolfenbach,* 36 F.Supp.2d at 1353–54 (concluding that plaintiff had no vested right in claim not pending on date of enactment and, therefore, statute had no retroactive effect); *Metz v. United Counties Bancorp,* 61 F.Supp.2d 364, 370 (D.N.J. 1999) (no rationale); *Gubitosi v. Zegeye,* 28 F.Supp.2d 298, 305 (1998) (ignoring fact that claim was filed after the effective date of the act and declining to apply the statute retroactively because plaintiff had no other way to recover); *Scott,* 1998 WL 704287 at *5 (finding persuasive the cases that did not apply the PSLRA retroactively, only to cases pending on date of enactment); *ABF Capital,* 957 F.Supp. at 1321 (finding no retroactive effect).

The defendants argue in the alternative that even if the amendment does not apply retroactively to claims filed after the effective date of the PSLRA that are based on conduct occurring before it became effective, Scott's claims under RICO should not

be allowed to stand because he has other remedies.[11]

The statute of limitations for RICO is four years, *see Agency Holding Corp. v. Malley–Duff & Assoc.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), while the statute of limitations for violations of securities fraud is one year from discovery ("inquiry notice") and within three years of the violation, *see* 15 U.S.C. § 78i(e) (1994). Common law statutes of limitations depend on state law. Because of the different statutes of limitations, it is possible that some plaintiffs who filed claims under RICO have other available remedies if, for example, they file their RICO claims within one year from discovery, while other plaintiffs have no other remedies.

A majority of district courts considering the retroactivity of the RICO amendment have found relevant the question whether the plaintiff had available other possible remedies. These district courts either found that the PSLRA did not have retroactive effect because the plaintiffs had other remedies, *Kolfenbach*, 36 F.Supp.2d at 1354 n. 13; *ABF Capital*, 957 F.Supp. at 1321; *Rowe*, 955 F.Supp. at 847; *Krear*, 961 F.Supp. at 1074; *Reading Wireless*, 1996 WL 741432 at *2, or, they implied that because the only possible remedy would be one under RICO, the PSLRA had retroactive effect. *See Gubitosi*, 28 F.Supp.2d at 305; *District 65 Retirement Trust for Members of the Bureau Wholesale Sales Reps. v. Prudential Securities*, 925 F.Supp. 1551, 1570 (N.D.Ga.1996) (suit filed pre-PSLRA); *Klein v. Boyd*, 1996 WL 675554 *1, *30 (E.D.Pa. Nov.19, 1996); *In re Prudential*, 930 F.Supp. at 79–80.

This analysis seems problematic. First, "it would be strange to determine the temporal reach of the RICO amendment on a case-by-case basis, based on the existence (or lack thereof) of non-RICO claims in plaintiff's case." *Mathews*, 161 F.3d at 164

n. 15. Second, as a matter of logic, the retroactive effect of the RICO amendment is not removed by the presence of alternative claims.

Third, a decision along these lines would find that plaintiffs who had willingly let their securities fraud claims lapse and sought treble damages under RICO would be able to maintain their RICO claims while plaintiffs who had diligently filed both securities fraud and RICO claims would not be able to maintain their RICO claims. This works an inequity against a diligent plaintiff: the plaintiff who properly files all possible claims before the statutes of limitations expire may not receive treble damages under RICO while the less diligent plaintiff who has let all other claims expire may seek treble damages.

Finally, if plaintiffs were initially allowed to bring their securities fraud claims but at trial a defendant's statute of limitations defense prevailed, it would appear that plaintiffs would then be able to seek treble damages under RICO. *See In re MTC Electronic*, 74 F.Supp.2d at 281 ("It would be a strange rule that would then [after the securities fraud claims were dismissed] allow the plaintiff to revive their RICO claims, yet that seems to be the result the defendants' analysis would require.").

We conclude that the definitive acts for purposes of retroactivity under the PSLRA are the dates of the defendants' conduct.

The decision of the district court is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.

---

11. We need not consider the unclear question whether Scott has available other remedies because we conclude that the availability of other remedies is not relevant to the question whether the RICO amendment applies retroactively.